IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SEIKO EPSON CORPORATION,                    06-CV-236-BR
a Japan corporation; EPSON
AMERICA, INC., a California                 OPINION AND ORDER
corporation; and EPSON                      Portland Division
PORTLAND, INC., an Oregon
corporation,

                Plaintiffs,

v.

GLORY SOUTH SOFTWARE
MANUFACTURING, INC., a
California corporation;
BUTTERFLY PRINT IMAGE CORP.,
LTD, a Hong Kong company;
INK LAB (H.K.) CO., LTD,
a Hong Kong company; NECTRON
INTERNATIONAL, LTD, a Texas
company; NINE STAR IMAGE CO.,
LTD, a China company; NINE
STAR TECHNOLOGY CO., LTD, a
California company; TOWN
SKY, INC., a California
corporation; ZHUHAI GREE
MAGNETO-ELECTRIC CO., LTD,
a China company; MMC CONSUMABLES,
INC., a California company;
TULLY IMAGING SUPPLIES, LTD,

1  - OPINION AND ORDER

**a Hong Kong company; INKJET
WAREHOUSE.COM, INC., a Connecticut
corporation; WELLINK TRADING CO.,
LTD, a China company; RIBBON TREE
(MACAO) TRADING CO., LTD, a China
company; RIBBON TREE (USA), INC.,
dba CANA-PACIFIC RIBBONS, INC.,
a Washington company; APEX
DISTRIBUTING, INC., a Washington
company; DATAPRODUCTS USA, LLC, a
California limited liability
corporation; MASTER INK CO., LTD,
a Hong Kong company; and ACUJET U.S.A.,
INC., a California company,**

                **Defendants.**


**DAVID W. AXELROD**
**CONNIE C. KONG**
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 S.W. Fifth Ave, Suite 1900
Portland, OR 97204
(503) 796-2900
**AARON B. CRAIG**
**HAROLD A. BARZA**
**J.D. HORTON**
**RYAN S. GOLDSTEIN**
**TIGRAN GULEDJIAN**
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 624-7707

            Attorneys for Plaintiffs Seiko
            Epson Corporation; Epson America,
            Inc.; and Epson Portland, Inc.


**TIMOTHY S. DEJONG**
Stoll Stoll Berne Lokting & Schlachter, PC
209 S.W. Oak Street
Fifth Floor
Portland, OR 97204
(503) 227-1600


2  - OPINION AND ORDER

**EDWARD O'CONNOR**
**STEPHEN M. LOBBIN**
The Eclipse Group LLP
1920 Main Street
Suite 150
Irvine, CA 92614
(949) 851-5000

      Attorneys for Defendants Glory
      South Software Manufacturing, Inc.;
      Butterfly Print Image Corp., LTD;
      Ink Lab (H.K.) Co., LTD; Nectron
      International, LTD; Nine Star Image
      Co., LTD; Nine Star Technology
      Company, LTD; Town Sky, Inc.; and
      DataProducts USA, LLC

**CHARLES R. SUTTON**
**JOSEPH M. LIU**
Law Offices of Roger C. Hsu
201 S. Lake Ave.
Suite 302
Pasadena, CA 91101
**BERT P. KRAGES II**
6665 S.W. Hampton Street
Suite 200
Portland, OR 97223
(503) 597-2525

      Attorneys for Defendant Zhuhai
      Gree Magneto-Electric Co., LTD

**CHINTAN PANCHAL**
**JACOB S. PULTMAN**
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6340
**STEVEN M. WILKER**
Tonkon Torp LLP
888 S.W. Fifth Avenue
Suite 1600
Portland, OR 97204-2099
(503) 802-2040

      Attorneys for Defendants Tully Imaging
      Supplies, Ltd.; InkJetWarehouse.Com Inc.,

3  - OPINION AND ORDER

and Wellink Trading Co., Ltd.
**KATHLEEN CARROLL BRICKEN**
Garvey Schubert Barer
121 S.W. Morrison Street
11th Floor
Portland, OR 97204-3141

**BROWN, Judge.**

This matter comes before the Court on the Motion (#197) of Plaintiffs and Counter-Defendants Seiko Epson Corporation; Epson America, Inc.; and Epson Portland, Inc. (referred to collectively as Seiko Epson) to Dismiss and Strike or, in the Alternative, to Stay and Bifurcate Litigation of the Antitrust Counterclaims and Affirmative Defenses of Defendants Ninestar Image Co. Ltd.; Ninestar Technology Company, Ltd.; Town Sky, Inc.; and DataProducts USA LLC (referred to collectively as Ninestar) that are asserted in Ninestar's First Amended Answer, Affirmative Defenses, and Counterclaims (First Amended Answer).

Without obtaining leave of Court, Ninestar attached a proposed Second Amended Answer, Affirmative Defenses and Counterclaims (Second Amended Answer) to its Memorandum in Opposition to Seiko Epson's Motion to Dismiss. The Court, *nunc pro tunc* as of November 3, 2009, **GRANTS** Ninestar leave to file its Second Amended Answer and **DISMISSES with prejudice** all Counterclaims asserted in Ninestar's First Amended Answer that are not asserted in the Second Amended Answer. The Court also **GRANTS** Ninestar leave to amend its proposed Second Amended Answer

4  - OPINION AND ORDER

to add the language "and in obtaining a multimillion dollar penalty against Defendants in the International Trade Commission" in paragraph 24 of Ninestar's Affirmative Defense and paragraph 24 of Ninestar's Counterclaims.

For the following reasons, the Court also **GRANTS in part** and **DENIES in part** Seiko Epson's Motion to Dismiss and Strike or, in the Alternative, to Stay and Bifurcate Litigation of the Antitrust Counterclaims and Affirmative Defenses asserted in Ninestar's Second Amended Answer.


## BACKGROUND

In its Corrected First Amended Complaint, Seiko Epson asserts a single claim for Patent Infringement under 35 U.S.C. § 271 alleging Ninestar has infringed multiple patents issued to Seiko Epson between October 1992 and October 2005 relating to printer ink cartridges.[1]

In its First Amended Answer, Ninestar denied Seiko Epson's allegations and asserted affirmative defenses and counterclaims for damages and sought declaratory relief.  Ninestar alleged

---

[1] In a related case, *Seiko Epson Corp. v. Glory South Software Manufacturing, Inc.*, 06-CV-477-BR (*Glory South II),* Seiko Epson alleges Ninestar has infringed other patents.  The issues involved in both cases, however, are substantively identical, and Seiko Epson filed a similar Motion (#177) in that action.

Seiko Epson has used and conspired to use a litigation strategy purportedly to enforce its patents but for the actual purpose of restraining trade and monopolizing the market in ink-jet cartridges used in Epson printers in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2.  Ninestar also alleges under Oregon law Seiko Epson's conduct constitutes intentional and negligent interference with Ninestar's prospective economic advantage.

Seiko Epson moved to dismiss Ninestar's Antitrust and Tort Counterclaims and, if the Court did not dismiss the Antitrust Counterclaims, to stay and to bifurcate further litigation as to those Counterclaims pending the outcome of the trial on Seiko Epson's patent-infringement claim.

Ninestar responded in part by attaching its proposed Second Amended Answer to its Memorandum in Opposition to Seiko Epson's Motion to Dismiss.  According to Ninestar, the Second Amended Answer remedies any pleading defects in its First Amended Answer.

On November 3, 2009, the Court issued a scheduling Order requiring the parties to submit a joint status report identifying the issues raised in the pending Motion that would remain if the Court allowed Ninestar to file its Second Amended Answer.  In their Joint Status Report, the parties agree the remaining issues raised in the pending motion are (1) whether Ninestar has stated a "sham" litigation antitrust Counterclaim under § 2 of the

Sherman Act, (2) whether the Court should strike "extraneous" allegations in Ninestar's "Walker Process" Antitrust Counter-claim, (3) whether the Court should bifurcate and stay the antitrust issues raised in Ninestar's Counterclaims, and (4) whether the Court should dismiss Ninestar's Counterclaim for intentional interference with prospective economic advantage if Ninestar's "sham" litigation Counterclaim is dismissed.  In the Joint Status Report, Ninestar also concedes the Court should dismiss its Counterclaims as to antitrust conspiracy and negligent interference with prospective economic advantage.

## STANDARDS

### 1.  Failure to State a Claim.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is proper only if the pleadings fail to allege sufficient facts to establish a plausible entitlement to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 554, 555-56 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

7  - OPINION AND ORDER

*Id.* (Internal citations omitted).  *See also Ashcroft v. Iqbal,*
129 S. Ct. 1937, 1949 (2009)("To survive a motion to dismiss, a
complaint must contain sufficient factual matter, accepted
as true, to state a claim to relief that is plausible on its
face.").

The court must accept as true the allegations in the complaint
and construe them in favor of the plaintiff.  *Intri-Plex Tech.,
Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1050 n.2 (9th Cir.
2007).  "The court need not accept as true, however, allegations
that contradict facts that may be judicially noticed by the
court."  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir.
2000)(citations omitted).  The court's reliance on judicially-
noticed documents does not convert a motion to dismiss into a
summary-judgment motion.  *Intri-Plex*, 499 F.3d at 1052.

## 2.  **Bifurcation of Trial**.

Federal Rule of Civil Procedure 42(b) provides:  "[F]or
convenience, to avoid prejudice, or to expedite and economize,
the court, may order a separate trial of one or more separate
issues, claims, cross-claims, counterclaims, or third-party
claims" as long as the court "preserve[s] any federal right to a
jury trial."  "The district court has broad discretion to
bifurcate a trial to permit deferral of costly and possibly
unnecessary proceedings pending resolution of potentially
dispositive preliminary issues." *Jinro Am., Inc. v. Secure Inv.,*

8  - OPINION AND ORDER

*Inc.,* 266 F.3d 993, 998 (9ᵗʰ Cir. 2001).


## DISCUSSION

**1.    Sham Litigation Counterclaim.**

In it Second Counterclaim, Ninestar alleges Seiko Epson has initiated "sham" patent litigation in this Court and at the International Trade Commission (ITC) for the unlawful purpose of monopolizing trade in ink-jet cartridges that are used in Epson printers in violation of § 2 of the Sherman Antitrust Act, which provides:

> Every person who shall monopolize, or *attempt to monopolize*, or combine or conspire with any other persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony. . . .

(Emphasis added.)

To constitute "sham litigation" in the form of an alleged antitrust claim, "the [plaintiff's] lawsuit must be *objectively baseless* in the sense that no reasonable litigant could realistically expect success on the merits."  Even if it is objectively baseless, the plaintiff's *subjective intent must be* "*to attempt to interfere with the business relationships of a competitor.*"  *Prof. Real Estate Investors, Inc. v. Columbia Pictures Ind., Inc*., 508 U.S. 49, 61 (1993)(emphasis added).

The elements of an "attempt to monopolize" antitrust claim are:  (1) a specific intent to control prices or to destroy

competition, (2) predatory or anti-competitive conduct to accomplish the monopolization, (3) a dangerous probability of success, and (4) causal antitrust injury. *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).

In support of its Second Counterclaim, Ninestar alleges Seiko Epson has monopolized or attempted to monopolize the market for ink-jet cartridges used in Epson printers by knowingly asserting invalid infringement claims and initiating proceedings before the ITC for the purpose of obtaining a General Exclusion Order[2] and cease-and-desist orders, thereby substantially eliminating competition and increasing Seiko Epson's chances of monopolizing the market. Ninestar also alleges it has suffered substantial damages as a result of Seiko Epson's alleged "sham" litigation.

Seiko Epson, however, contends Ninestar's allegations of "sham" litigation fail to state a claim because Seiko Epson has already prevailed at the ITC as to one of the patents at issue in this case and as to eight other patents at issue in *Glory South II*, thereby establishing the objective reasonableness of its litigation strategy. The ITC's findings were affirmed by the Federal Circuit Court of Appeals. *See Ninestar Tech. Co., Ltd.*

---

[2] A "General Exclusion Order" issued by the ITC excludes importation into the United States of articles that infringe United States patents. 19 U.S.C. § 1337(a)(1)(B)(i) and (ii).

*v. Int'l Trade Comm.,* 309 Fed. Appx, 388 (Fed. Cir., Jan. 13, 2009)(*per curiam*), *cert. denied,* 129 S. Ct. 2759 (2009).[3]

Ninestar argues the ITC decision does not constitute *res judicata,* and, therefore, "[d]efendants have a right to have these [factual] determinations made in a court of law." Whether the ITC's decision has any *res judicata* effect, however, is irrelevant. The issues before the Court as to Ninestar's "sham" litigation Counterclaim are whether Seiko Epson's litigation strategy was objectively reasonable and, even if it was not, whether Seiko Epson's subjective intent was to interfere with Ninestar's business relationships.

Although the "objective reasonableness" and "subjective intent" of an actor would ordinarily require the resolution of fact issues, thereby precluding dismissal for failure to state a claim as a matter of law, the Court concludes in this case that Seiko Epson's success in asserting its rights to related patents before the ITC and on appeal to the Federal Circuit establishes as a matter of law that the litigation efforts it has undertaken to protect its patent rights have been objectively reasonable. As the Supreme Court stated in *Professional Real Estate,* "[u]nder the objective prong of the sham exception, the Court of Appeals

---

[3] At Seiko Epson's request, pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of adjudicative facts reporting, *inter alia,* prior relevant proceedings before the ITC and the U.S. Patent and Trademark Office.

correctly held sham litigation must constitute the pursuit of claims *so baseless that no reasonable litigant could realistically expect to secure favorable relief*."  508 U.S. at 62.  (Emphasis added.)  The Supreme Court noted "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."  *Id.* at 61 n.5.  The Court, therefore, concludes on this record that Seiko Epson's success in protecting its related patent rights before the ITC precludes as a matter of law Ninestar's Antitrust Counterclaim that Seiko Epson has engaged in "sham" litigation in violation of § 2 of the Sherman Act.

Accordingly, the Court **GRANTS** Seiko Epson's Motion to Dismiss Ninestar's Counterclaim based on "sham" litigation, in violation of Section 2 of the Sherman Act.

**2.  <u>Walker Process Counterclaim</u>.**

In its Second Amended Answer, Ninestar alleges a "Walker Process" Antitrust Fraud Counterclaim under § 2 of the Sherman Act based on Seiko Epson's allegedly fraudulent prosecution of its patents before the Patent Office, including Seiko Epson's alleged conduct in withholding material information and misrepresenting prior relevant art.

Seiko Epson, in turn, requests the Court to enter an Order requiring Ninestar to replead this Counterclaim specifically by limiting it to an alleged violation of § 2 of the Sherman Act

without the improper "sham litigation allegations, improper
requests for relief, and other extraneous matter."  Seiko Epson
also asserts Ninestar has failed to plead an essential element of
a *Walker Process* Antitrust Fraud Counterclaim; *i.e.,* "but for"
Seiko Epson's alleged fraud and/or misrepresentations to the
Patent Office, the Patent office would not have issued the
patents.

       In *Walker Processing Equipment, Inc. v. Food Machinery &*
*Chemical Corporation*, the Supreme Court held "enforcement of a
patent procured by fraud on the Patent Office may be violative of
§ 2 of the Sherman Act provided the other elements necessary to a
§ 2 case are present.  In such event the treble damage provisions
of § 4 of the Clayton Act would be available to an injured
party."  382 U.S. 172, 174 (1965).

       In its Second Amended Answer, Ninestar alleges affirmative
defenses of patent invalidity based on inequitable conduct and an
Antitrust Counterclaim as to *Walker Process* fraud based on the
same inequitable conduct:  Seiko Epson's alleged failure to
disclose and misrepresentation of prior art as to Patents
5,158,377 ('377 Patent), 5,221,148 ('148 Patent), 6,502,917
('917 Patent), and 6,955,422 ('422 Patent).  Ninestar's
allegations, standing alone, are sufficient to support its
Twelfth, Thirteenth, and Fourteenth Affirmative Defenses of
patent invalidity based on inequitable conduct.  In support of

13 - OPINION AND ORDER

its *Walker Process* Antitrust Fraud Counterclaim, however, Ninestar also alleges if Seiko Epson had disclosed the prior art, the Patent Office Examiner would not have issued any of the four patents.[4]

"To demonstrate *Walker Process* fraud, a claimant must [allege and] prove "the patent would not have issued *but for* the patent examiner's justifiable reliance on the patentee's misrepresentation or omission." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007)(emphasis added).  The Court concludes Ninestar's Second Amended Answer sufficiently pleads the requisite "but for" language that is necessary to state an antitrust counterclaim based on *Walker Process* fraud.

For these reasons, the Court **DENIES** Seiko Epson's Motion to Dismiss Ninestar's Antitrust Counterclaim based on *Walker Process* fraud in violation of § 2 of the Sherman Act.

3.    **Bifurcation and Stay of Antitrust Counterclaim.**

In the alternative to dismissal**,** Seiko Epson urges this Court to exercise its discretion to bifurcate from the case-in-chief and to stay trial of Ninestar's *Walker Process* Antitrust Fraud Counterclaim pursuant to Federal Rule of Civil Procedure 42(b), thereby resolving the patent issues first and reserving the antitrust issue for a second jury trial if necessary.

---

[4] *See* Ninestar's Second Amended Answer*,* ¶¶ 29 r, t, x, and z and ¶¶ 30-33, 35-36, and 39-40 ('377 and '148 Patents); ¶¶ 35-36 ('917 Patent); and ¶¶ 39-40 ('422 Patent).

To support its request, Seiko Epson points out that if the jury rendered a verdict in the first trial that Seiko Epson's patents are valid, the case would end if (1) Ninestar's affirmative defense of inequitable conduct is presented to the jury for an advisory finding, (2) the jury rejects the defense, and (3) the Court adopts the jury's finding.  As a result, Ninestar's *Walker Process* Antitrust Fraud Counterclaim would fail as a matter of law because there would not be the predicate finding of inequitable conduct to support the Counterclaim. On the other hand, if the jury were to make an advisory finding that any of the patents were invalid based on Seiko Epson's alleged inequitable conduct before the Patent Office, the *Walker Process* Antitrust Fraud Counterclaim would have to be resolved in a subsequent trial (to a jury, if requested) to decide whether the patents would have issued regardless of Seiko Epson's inequitable conduct.

On balance the Court concludes a jury trial of this patent case will be challenging enough without the simultaneous inclusion of antitrust issues.  Moreover, only Ninestar, of all of the multiple defendants in this case, has asserted a *Walker Process* Antitrust Fraud Counterclaim, which may further complicate what  already is a complex case for the jury.

In the exercise of its discretion, therefore, the Court concludes the efficient trial of this case is best served by

15 - OPINION AND ORDER

bifurcating and staying trial of Ninestar's Walker Process
Antitrust Fraud Counterclaim.  Accordingly, the Court **GRANTS**
Seiko Epson's Motion to Bifurcate and Stay Litigation as to
Defendant Ninestar's *Walker Process* Antitrust Fraud Counterclaim.

4.    <u>**Intentional Interference with Prospective Economic
      Advantage**</u>.

        Ninestar alleges Seiko Epson's litigation strategy in
this Court and before the ITC supports Ninestar's state-law
Counterclaim for Intentional Interference with Prospective
Economic Advantage.  In *Globetrotter Software, Inc. v. Elan
Computer Group, Inc.,* however, the Federal Circuit held the same
"objectively baseless" standard applied by the Supreme Court
in *Professional Real Estate* as to "sham" antitrust litigation
also applies to state-law claims based on interference with
prospective economic advantage.  362 F.3d 1367, 1377 (Fed. Cir.
2004).

        Here the Court concludes Seiko Epson's success in litigating
and appealing related patents before the ITC or on appeal in the
Federal Circuit precludes Ninestar's state-law claim as a matter
of law based on the Court's finding that Seiko Epson's litigation
strategy has not been objectively baseless.

        Accordingly, the Court **GRANTS** Seiko Epson's Motion to
Dismiss Defendant Ninestar's Counterclaim for Intentional
Interference with Prospective Economic Advantage.

## CONCLUSION

For these reasons, the Court, *nunc pro tunc* as of November 3, 2009, **GRANTS** Defendant Ninestar leave to file the Second Amended Answer and **DISMISSES with prejudice** all Counterclaims asserted in Ninestar's First Amended Answer that Ninestar has not asserted in its Second Amended Answer.  The Court also **GRANTS** Seiko Epson's Motion (#197) to Dismiss Ninestar's Counterclaim based on "sham" antitrust litigation in violation of § 2 of the Sherman Act, **DENIES** Seiko Epson's Motion to Dismiss Ninestar's Counterclaim based on *Walker Process* antitrust fraud in violation of § 2 of the Sherman Act, **GRANTS** Seiko Epson's Motion to Stay and Bifurcate Litigation of Ninestar's Counterclaim based on *Walker Process* antitrust fraud, and **GRANTS** Seiko Epson's Motion to Dismiss Ninestar's Counterclaim for Intentional Interference with Prospective Economic Advantage.

IT IS SO ORDERED.

DATED this 19th day of January, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SEIKO EPSON CORPORATION,                    06-CV-236-BR
a Japan corporation; EPSON
AMERICA, INC., a California                 OPINION AND ORDER
corporation; and EPSON                      Portland Division
PORTLAND, INC., an Oregon
corporation,

                    Plaintiffs,

v.

GLORY SOUTH SOFTWARE
MANUFACTURING, INC., a
California corporation;
BUTTERFLY PRINT IMAGE CORP.,
LTD, a Hong Kong company;
INK LAB (H.K.) CO., LTD,
a Hong Kong company; NECTRON
INTERNATIONAL, LTD, a Texas
company; NINE STAR IMAGE CO.,
LTD, a China company; NINE
STAR TECHNOLOGY CO., LTD, a
California company; TOWN
SKY, INC., a California
corporation; ZHUHAI GREE
MAGNETO-ELECTRIC CO., LTD,
a China company; MMC CONSUMABLES,
INC., a California company;
TULLY IMAGING SUPPLIES, LTD,

1  - OPINION AND ORDER

a Hong Kong company; INKJET
WAREHOUSE.COM, INC., a Connecticut
corporation; WELLINK TRADING CO.,
LTD, a China company; RIBBON TREE
(MACAO) TRADING CO., LTD, a China
company; RIBBON TREE (USA), INC.,
dba CANA-PACIFIC RIBBONS, INC.,
a Washington company; APEX
DISTRIBUTING, INC., a Washington
company; DATAPRODUCTS USA, LLC, a
California limited liability
corporation; MASTER INK CO., LTD,
a Hong Kong company; and ACUJET U.S.A.,
INC., a California company,

        **Defendants.**


**DAVID W. AXELROD**
**CONNIE C. KONG**
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 S.W. Fifth Ave, Suite 1900
Portland, OR 97204
(503) 796-2900
**AARON B. CRAIG**
**HAROLD A. BARZA**
**J.D. HORTON**
**RYAN S. GOLDSTEIN**
**TIGRAN GULEDJIAN**
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 624-7707

        Attorneys for Plaintiffs Seiko
        Epson Corporation; Epson America,
        Inc.; and Epson Portland, Inc.


**TIMOTHY S. DEJONG**
Stoll Stoll Berne Lokting & Schlachter, PC
209 S.W. Oak Street
Fifth Floor
Portland, OR 97204
(503) 227-1600


2  - OPINION AND ORDER

**EDWARD O'CONNOR**
**STEPHEN M. LOBBIN**
The Eclipse Group LLP
1920 Main Street
Suite 150
Irvine, CA 92614
(949) 851-5000

       Attorneys for Defendants Glory
       South Software Manufacturing, Inc.;
       Butterfly Print Image Corp., LTD;
       Ink Lab (H.K.) Co., LTD; Nectron
       International, LTD; Nine Star Image
       Co., LTD; Nine Star Technology
       Company, LTD; Town Sky, Inc.; and
       DataProducts USA, LLC

**CHARLES R. SUTTON**
**JOSEPH M. LIU**
Law Offices of Roger C. Hsu
201 S. Lake Ave.
Suite 302
Pasadena, CA 91101
**BERT P. KRAGES II**
6665 S.W. Hampton Street
Suite 200
Portland, OR 97223
(503) 597-2525

       Attorneys for Defendant Zhuhai
       Gree Magneto-Electric Co., LTD

**CHINTAN PANCHAL**
**JACOB S. PULTMAN**
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6340
**STEVEN M. WILKER**
Tonkon Torp LLP
888 S.W. Fifth Avenue
Suite 1600
Portland, OR 97204-2099
(503) 802-2040

       Attorneys for Defendants Tully Imaging
       Supplies, Ltd.; InkJetWarehouse.Com Inc.,

3  - OPINION AND ORDER

and Wellink Trading Co., Ltd.
**KATHLEEN CARROLL BRICKEN**
Garvey Schubert Barer
121 S.W. Morrison Street
11th Floor
Portland, OR 97204-3141

**BROWN, Judge.**

This matter comes before the Court on the Motion (#197)

of Plaintiffs and Counter-Defendants Seiko Epson Corporation;

Epson America, Inc.; and Epson Portland, Inc. (referred to

collectively as Seiko Epson) to Dismiss and Strike or, in the

Alternative, to Stay and Bifurcate Litigation of the Antitrust

Counterclaims and Affirmative Defenses of Defendants Ninestar

Image Co. Ltd.; Ninestar Technology Company, Ltd.; Town Sky,

Inc.; and DataProducts USA LLC (referred to collectively as

Ninestar) that are asserted in Ninestar's First Amended Answer,

Affirmative Defenses, and Counterclaims (First Amended Answer).

Without obtaining leave of Court, Ninestar attached

a proposed Second Amended Answer, Affirmative Defenses and

Counterclaims (Second Amended Answer) to its Memorandum in

Opposition to Seiko Epson's Motion to Dismiss.  The Court, *nunc*

*pro tunc* as of November 3, 2009, **GRANTS** Ninestar leave to file

its Second Amended Answer and **DISMISSES with prejudice** all

Counterclaims asserted in Ninestar's First Amended Answer that

are not asserted in the Second Amended Answer.  The Court also

**GRANTS** Ninestar leave to amend its proposed Second Amended Answer

4  - OPINION AND ORDER

to add the language "and in obtaining a multimillion dollar penalty against Defendants in the International Trade Commission" in paragraph 24 of Ninestar's Affirmative Defense and paragraph 24 of Ninestar's Counterclaims.

For the following reasons, the Court also **GRANTS in part** and **DENIES in part** Seiko Epson's Motion to Dismiss and Strike or, in the Alternative, to Stay and Bifurcate Litigation of the Antitrust Counterclaims and Affirmative Defenses asserted in Ninestar's Second Amended Answer.

## BACKGROUND

In its Corrected First Amended Complaint, Seiko Epson asserts a single claim for Patent Infringement under 35 U.S.C. § 271 alleging Ninestar has infringed multiple patents issued to Seiko Epson between October 1992 and October 2005 relating to printer ink cartridges.[1]

In its First Amended Answer, Ninestar denied Seiko Epson's allegations and asserted affirmative defenses and counterclaims for damages and sought declaratory relief. Ninestar alleged

---

[1] In a related case, *Seiko Epson Corp. v. Glory South Software Manufacturing, Inc.*, 06-CV-477-BR (*Glory South II)*, Seiko Epson alleges Ninestar has infringed other patents. The issues involved in both cases, however, are substantively identical, and Seiko Epson filed a similar Motion (#177) in that action.

5  - OPINION AND ORDER

Seiko Epson has used and conspired to use a litigation strategy purportedly to enforce its patents but for the actual purpose of restraining trade and monopolizing the market in ink-jet cartridges used in Epson printers in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2.  Ninestar also alleges under Oregon law Seiko Epson's conduct constitutes intentional and negligent interference with Ninestar's prospective economic advantage.

Seiko Epson moved to dismiss Ninestar's Antitrust and Tort Counterclaims and, if the Court did not dismiss the Antitrust Counterclaims, to stay and to bifurcate further litigation as to those Counterclaims pending the outcome of the trial on Seiko Epson's patent-infringement claim.

Ninestar responded in part by attaching its proposed Second Amended Answer to its Memorandum in Opposition to Seiko Epson's Motion to Dismiss.  According to Ninestar, the Second Amended Answer remedies any pleading defects in its First Amended Answer.

On November 3, 2009, the Court issued a scheduling Order requiring the parties to submit a joint status report identifying the issues raised in the pending Motion that would remain if the Court allowed Ninestar to file its Second Amended Answer.  In their Joint Status Report, the parties agree the remaining issues raised in the pending motion are (1) whether Ninestar has stated a "sham" litigation antitrust Counterclaim under § 2 of the

Sherman Act, (2) whether the Court should strike "extraneous" allegations in Ninestar's "Walker Process" Antitrust Counter-claim, (3) whether the Court should bifurcate and stay the antitrust issues raised in Ninestar's Counterclaims, and (4) whether the Court should dismiss Ninestar's Counterclaim for intentional interference with prospective economic advantage if Ninestar's "sham" litigation Counterclaim is dismissed.  In the Joint Status Report, Ninestar also concedes the Court should dismiss its Counterclaims as to antitrust conspiracy and negligent interference with prospective economic advantage.

<strong><u>STANDARDS</u></strong>

**1.    <u>Failure to State a Claim</u>.**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is proper only if the pleadings fail to allege sufficient facts to establish a plausible entitlement to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 554, 555-56 (2007).

> While a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed
> factual allegations, a plaintiff's obligation
> to provide the 'grounds' of his
> 'entitle[ment] to relief' requires more than
> labels and conclusions, and a formulaic
> recitation of the elements of a cause of
> action will not do.  Factual allegations must
> be enough to raise a right to relief above
> the speculative level on the assumption that
> all the allegations in the complaint are true
> (even if doubtful in fact).

7  - OPINION AND ORDER

*Id.* (Internal citations omitted).  *See also Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff.  *Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1050 n.2 (9th Cir. 2007).  "The court need not accept as true, however, allegations that contradict facts that may be judicially noticed by the court."  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000)(citations omitted).  The court's reliance on judicially-noticed documents does not convert a motion to dismiss into a summary-judgment motion.  *Intri-Plex*, 499 F.3d at 1052.

**2.**   **<u>Bifurcation of Trial</u>.**

Federal Rule of Civil Procedure 42(b) provides:  "[F]or convenience, to avoid prejudice, or to expedite and economize, the court, may order a separate trial of one or more separate issues, claims, cross-claims, counterclaims, or third-party claims" as long as the court "preserve[s] any federal right to a jury trial."  "The district court has broad discretion to bifurcate a trial to permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues."  *Jinro Am., Inc. v. Secure Inv.,*

8  - OPINION AND ORDER

*Inc.,* 266 F.3d 993, 998 (9th Cir. 2001).


**DISCUSSION**

1.    **Sham Litigation Counterclaim.**

In it Second Counterclaim, Ninestar alleges Seiko Epson has initiated "sham" patent litigation in this Court and at the International Trade Commission (ITC) for the unlawful purpose of monopolizing trade in ink-jet cartridges that are used in Epson printers in violation of § 2 of the Sherman Antitrust Act, which provides:

> Every person who shall monopolize, or *attempt to monopolize*, or combine or conspire with any other persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony. . . .

(Emphasis added.)

To constitute "sham litigation" in the form of an alleged antitrust claim, "the [plaintiff's] lawsuit must be *objectively baseless* in the sense that no reasonable litigant could realistically expect success on the merits."  Even if it is objectively baseless, the plaintiff's *subjective intent must be* "*to attempt to interfere with the business relationships of a competitor.*"  *Prof. Real Estate Investors, Inc. v. Columbia Pictures Ind., Inc*., 508 U.S. 49, 61 (1993)(emphasis added).

The elements of an "attempt to monopolize" antitrust claim are:  (1) a specific intent to control prices or to destroy

9  - OPINION AND ORDER

competition, (2) predatory or anti-competitive conduct to accomplish the monopolization, (3) a dangerous probability of success, and (4) causal antitrust injury. *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).

In support of its Second Counterclaim, Ninestar alleges Seiko Epson has monopolized or attempted to monopolize the market for ink-jet cartridges used in Epson printers by knowingly asserting invalid infringement claims and initiating proceedings before the ITC for the purpose of obtaining a General Exclusion Order[2] and cease-and-desist orders, thereby substantially eliminating competition and increasing Seiko Epson's chances of monopolizing the market.  Ninestar also alleges it has suffered substantial damages as a result of Seiko Epson's alleged "sham" litigation.

Seiko Epson, however, contends Ninestar's allegations of "sham" litigation fail to state a claim because Seiko Epson has already prevailed at the ITC as to one of the patents at issue in this case and as to eight other patents at issue in *Glory South II*, thereby establishing the objective reasonableness of its litigation strategy.  The ITC's findings were affirmed by the Federal Circuit Court of Appeals.  *See Ninestar Tech. Co., Ltd.*

───────────────

[2] A "General Exclusion Order" issued by the ITC excludes importation into the United States of articles that infringe United States patents.  19 U.S.C. § 1337(a)(1)(B)(i) and (ii).

10 - OPINION AND ORDER

*v. Int'l Trade Comm.,* 309 Fed. Appx, 388 (Fed. Cir., Jan. 13, 2009)(*per curiam*), *cert. denied,* 129 S. Ct. 2759 (2009).[3]

Ninestar argues the ITC decision does not constitute *res judicata,* and, therefore, "[d]efendants have a right to have these [factual] determinations made in a court of law." Whether the ITC's decision has any *res judicata* effect, however, is irrelevant. The issues before the Court as to Ninestar's "sham" litigation Counterclaim are whether Seiko Epson's litigation strategy was objectively reasonable and, even if it was not, whether Seiko Epson's subjective intent was to interfere with Ninestar's business relationships.

Although the "objective reasonableness" and "subjective intent" of an actor would ordinarily require the resolution of fact issues, thereby precluding dismissal for failure to state a claim as a matter of law, the Court concludes in this case that Seiko Epson's success in asserting its rights to related patents before the ITC and on appeal to the Federal Circuit establishes as a matter of law that the litigation efforts it has undertaken to protect its patent rights have been objectively reasonable. As the Supreme Court stated in *Professional Real Estate,* "[u]nder the objective prong of the sham exception, the Court of Appeals

_____

[3] At Seiko Epson's request, pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of adjudicative facts reporting, *inter alia,* prior relevant proceedings before the ITC and the U.S. Patent and Trademark Office.

correctly held sham litigation must constitute the pursuit
of claims *so baseless that no reasonable litigant could
realistically expect to secure favorable relief*."  508 U.S. at
62.  (Emphasis added.)  The Supreme Court noted "[a] winning
lawsuit is by definition a reasonable effort at petitioning for
redress and therefore not a sham."  *Id.* at 61 n.5.  The Court,
therefore, concludes on this record that Seiko Epson's success in
protecting its related patent rights before the ITC precludes as
a matter of law Ninestar's Antitrust Counterclaim that Seiko
Epson has engaged in "sham" litigation in violation of § 2 of the
Sherman Act.

Accordingly, the Court **GRANTS** Seiko Epson's Motion to
Dismiss Ninestar's Counterclaim based on "sham" litigation,
in violation of Section 2 of the Sherman Act.

**2.    Walker Process Counterclaim.**

In its Second Amended Answer, Ninestar alleges a "Walker
Process" Antitrust Fraud Counterclaim under § 2 of the Sherman
Act based on Seiko Epson's allegedly fraudulent prosecution of
its patents before the Patent Office, including Seiko Epson's
alleged conduct in withholding material information and
misrepresenting prior relevant art.

Seiko Epson, in turn, requests the Court to enter an Order
requiring Ninestar to replead this Counterclaim specifically by
limiting it to an alleged violation of § 2 of the Sherman Act

12 - OPINION AND ORDER

without the improper "sham litigation allegations, improper requests for relief, and other extraneous matter."  Seiko Epson also asserts Ninestar has failed to plead an essential element of a *Walker Process* Antitrust Fraud Counterclaim; *i.e.,* "but for" Seiko Epson's alleged fraud and/or misrepresentations to the Patent Office, the Patent office would not have issued the patents.

In *Walker Processing Equipment, Inc. v. Food Machinery & Chemical Corporation*, the Supreme Court held "enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present.  In such event the treble damage provisions of § 4 of the Clayton Act would be available to an injured party."  382 U.S. 172, 174 (1965).

In its Second Amended Answer, Ninestar alleges affirmative defenses of patent invalidity based on inequitable conduct and an Antitrust Counterclaim as to *Walker Process* fraud based on the same inequitable conduct:  Seiko Epson's alleged failure to disclose and misrepresentation of prior art as to Patents 5,158,377 ('377 Patent), 5,221,148 ('148 Patent), 6,502,917 ('917 Patent), and 6,955,422 ('422 Patent).  Ninestar's allegations, standing alone, are sufficient to support its Twelfth, Thirteenth, and Fourteenth Affirmative Defenses of patent invalidity based on inequitable conduct.  In support of

13 - OPINION AND ORDER

its *Walker Process* Antitrust Fraud Counterclaim, however,
Ninestar also alleges if Seiko Epson had disclosed the prior art,
the Patent Office Examiner would not have issued any of the four
patents.[4]

"To demonstrate *Walker Process* fraud, a claimant must
[allege and] prove "the patent would not have issued *but for* the
patent examiner's justifiable reliance on the patentee's
misrepresentation or omission." *Dippin' Dots, Inc. v. Mosey*, 476
F.3d 1337, 1347 (Fed. Cir. 2007)(emphasis added).  The Court
concludes Ninestar's Second Amended Answer sufficiently pleads
the requisite "but for" language that is necessary to state an
antitrust counterclaim based on *Walker Process* fraud.

For these reasons, the Court **DENIES** Seiko Epson's Motion to
Dismiss Ninestar's Antitrust Counterclaim based on *Walker Process*
fraud in violation of § 2 of the Sherman Act.

3.    <u>**Bifurcation and Stay of Antitrust Counterclaim.**</u>

In the alternative to dismissal, Seiko Epson urges this
Court to exercise its discretion to bifurcate from the case-in-
chief and to stay trial of Ninestar's *Walker Process* Antitrust
Fraud Counterclaim pursuant to Federal Rule of Civil Procedure
42(b), thereby resolving the patent issues first and reserving
the antitrust issue for a second jury trial if necessary.

---

[4] *See* Ninestar's Second Amended Answer, ¶¶ 29 r, t, x, and z
and ¶¶ 30-33, 35-36, and 39-40 ('377 and '148 Patents); ¶¶ 35-36
('917 Patent); and ¶¶ 39-40 ('422 Patent).

14 - OPINION AND ORDER

To support its request, Seiko Epson points out that if the jury rendered a verdict in the first trial that Seiko Epson's patents are valid, the case would end if (1) Ninestar's affirmative defense of inequitable conduct is presented to the jury for an advisory finding, (2) the jury rejects the defense, and (3) the Court adopts the jury's finding. As a result, Ninestar's *Walker Process* Antitrust Fraud Counterclaim would fail as a matter of law because there would not be the predicate finding of inequitable conduct to support the Counterclaim. On the other hand, if the jury were to make an advisory finding that any of the patents were invalid based on Seiko Epson's alleged inequitable conduct before the Patent Office, the *Walker Process* Antitrust Fraud Counterclaim would have to be resolved in a subsequent trial (to a jury, if requested) to decide whether the patents would have issued regardless of Seiko Epson's inequitable conduct.

On balance the Court concludes a jury trial of this patent case will be challenging enough without the simultaneous inclusion of antitrust issues. Moreover, only Ninestar, of all of the multiple defendants in this case, has asserted a *Walker Process* Antitrust Fraud Counterclaim, which may further complicate what already is a complex case for the jury.

In the exercise of its discretion, therefore, the Court concludes the efficient trial of this case is best served by

15 - OPINION AND ORDER

bifurcating and staying trial of Ninestar's Walker Process Antitrust Fraud Counterclaim.  Accordingly, the Court **GRANTS** Seiko Epson's Motion to Bifurcate and Stay Litigation as to Defendant Ninestar's *Walker Process* Antitrust Fraud Counterclaim.

**4.    Intentional Interference with Prospective Economic Advantage.**

Ninestar alleges Seiko Epson's litigation strategy in this Court and before the ITC supports Ninestar's state-law Counterclaim for Intentional Interference with Prospective Economic Advantage.  In *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* however, the Federal Circuit held the same "objectively baseless" standard applied by the Supreme Court in *Professional Real Estate* as to "sham" antitrust litigation also applies to state-law claims based on interference with prospective economic advantage.  362 F.3d 1367, 1377 (Fed. Cir. 2004).

Here the Court concludes Seiko Epson's success in litigating and appealing related patents before the ITC or on appeal in the Federal Circuit precludes Ninestar's state-law claim as a matter of law based on the Court's finding that Seiko Epson's litigation strategy has not been objectively baseless.

Accordingly, the Court **GRANTS** Seiko Epson's Motion to Dismiss Defendant Ninestar's Counterclaim for Intentional Interference with Prospective Economic Advantage.

16 - OPINION AND ORDER

## CONCLUSION

For these reasons, the Court, *nunc pro tunc* as of November 3, 2009, **GRANTS** Defendant Ninestar leave to file the Second Amended Answer and **DISMISSES with prejudice** all Counterclaims asserted in Ninestar's First Amended Answer that Ninestar has not asserted in its Second Amended Answer.  The Court also **GRANTS** Seiko Epson's Motion (#197) to Dismiss Ninestar's Counterclaim based on "sham" antitrust litigation in violation of § 2 of the Sherman Act, **DENIES** Seiko Epson's Motion to Dismiss Ninestar's Counterclaim based on *Walker Process* antitrust fraud in violation of § 2 of the Sherman Act, **GRANTS** Seiko Epson's Motion to Stay and Bifurcate Litigation of Ninestar's Counterclaim based on *Walker Process* antitrust fraud, and **GRANTS** Seiko Epson's Motion to Dismiss Ninestar's Counterclaim for Intentional Interference with Prospective Economic Advantage.

IT IS SO ORDERED.

DATED this 19th day of January, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


17 - OPINION AND ORDER